DOUGLAS H. WIGDOR (NY SBN 2609469)
JEANNE M. CHRISTENSEN (NY SBN 2622124)
ELIZABETH J. CHEN (NY SBN 5126214)
(To be admitted *pro hac vice*)
**WIGDOR LLP**
85 Fifth Avenue, Fifth Floor
New York, NY 10003
Tel.: (212) 257-6800
Fax: (212) 257-6845

JAMIE C. COUCHE (SBN 252001)
**ANDERSON & POOLE, P.C.**
601 California Street, Suite 1300
San Francisco, CA 94108
Tel.: (415) 956-6413
Fax: (415) 956-6416

Attorneys for Plaintiff,
**JANE DOE**

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE,<br><br>        Plaintiff,<br><br>    vs.<br><br>UBER TECHNOLOGIES, INC., TRAVIS KALANICK, *in his personal and professional capacities*, ERIC ALEXANDER, *in his personal and professional capacities* and EMIL MICHAEL, *in his personal and professional capacities*,<br><br>        Defendants. | Case No.:<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Jane Doe, by and through undersigned counsel Wigdor LLP as and for her Complaint against Defendants Uber Technologies, Inc. ("Uber" or the "Company"), Travis Kalanick, Eric Alexander and Emil Michael (together, "Defendants"), hereby alleges as follows:

## PRELIMINARY STATEMENT

1.     Uber has taken start-up culture, in which "fierceness" and "always be hustling," two key "Uber Competencies," are prioritized above people to a new extreme, perpetuating rape culture and violating all bounds of decency as to customer privacy.

2.     Plaintiff was violated physically when she was brutally raped in Delhi, India by her Uber driver in December 2014.  Sadly, in the United States, Uber executives violated her a second time by unlawfully obtaining and sharing her medical records from that vicious sexual assault and have failed, as of the date of this filing, to apologize to her for this outrageous conduct.

3.     Uber executives duplicitously and publicly decried the rape, expressing sympathy for Plaintiff, and shock and regret at the violent attack, while privately speculating, as outlandish as it is, that she had colluded with a rival company to harm Uber's business.

4.     In December 2014, Travis Kalanick ("Kalanick"), Uber's Chief Executive Officer, went so far as to make the following public statement:

> What happened over the weekend in New Delhi is horrific. Our entire team's hearts go out to the victim of this despicable crime. We will do everything, I repeat, everything to help bring this perpetrator to justice and to support the victim and her family in her recovery.
>
> We will work with the government to establish clear background checks currently absent in their commercial transportation licensing programs. We will also partner closely with the groups who are leading the way on women's safety here in New Delhi and around the country and invest in technology advances to help make New Delhi a safer city for women.[1]

---

[1]     https://newsroom.uber.com/india/statement-from-uber-ceo-travis-kalanick/.

*Complaint for Damages*                                                                 *Doe v. Uber Technologies, Inc.*

5.      Uber's feigned concern was exposed shortly thereafter when the Company failed to do anything to "support the victim and her family" or to "make New Delhi a safer city for women."

6.      Kalanick, Eric Alexander ("Alexander"), Uber's then-Vice President for Business in Asia and Emil Michael ("Michael"), Uber's then-Senior Vice President for Business, bought into the narrative of rape denialism which focuses on whether a victim had been drinking, what she was wearing, or whether she knew the alleged rapist, rather than on the very real physical, emotional and financial toll that rape takes on a victim.[2]

7.      By focusing on "whether she was really raped at all," and painting Plaintiff as an opportunist and a liar, Defendants seemed to be assuring themselves that the only reason why a woman would report a sexual assault is for personal gain, rather than to prevent similar crimes from occurring again or to right an injustice.

8.      Indeed, only by discrediting Jane Doe's account of what happened, including her medical records about the rape, could Kalanick, Alexander and Michael have contrived such an irrational and fictitious story about a rival ride-sharing company being involved in her rape account.

9.      After Plaintiff's sexual assault, Alexander went directly to Delhi where he managed to obtain Plaintiff's confidential, private medical records generated by physicians who examined her after the brutal rape.

---

[2]      *See* Rebecca M. Loya, *Rape as an Economic Crime: The Impact of Sexual Violence on Survivors' Employment and Economic Well-Being*, J. INTERPERSONAL VIOLENCE (Nov. 6, 2014). According to studies, sexual assault and the related trauma response can disrupt survivors' employment in several ways, including time off, diminished performance, job loss and inability to work.  These outcomes can have long term impacts on the financial well-being of survivors, limiting long-term economic stability.  *Id.*

10.     Alexander showed the records to Kalanick and Michael.

11.     Alexander, Kalanick and Michael discussed the records among themselves and with other staff at Uber, speculating that Plaintiff had made up the brutal rape in collusion with a rival of Uber in India in order to undermine Uber's business.

12.     Nothing was further from the truth.

13.     Plaintiff was raped, and her Uber driver was convicted in a criminal proceeding for her rape.[3]

14.     This flagrantly irresponsible, defamatory and offensive theory concocted by Alexander, Kalanick and Michael has no rational basis.  Upon information and belief, Alexander, Kalanick and Michael have no medical training from which they could have reviewed medical examination records of a rape victim and arrived at such a hypothesis.  Indeed, Alexander's actions were just a sampling in a long series of inappropriate, discriminatory actions that he, Kalanick and Michael took for years without any consequences.

15.     By way of example only, Kalanick once sent a memo to his subordinates lamenting the fact that he would remain celibate at a work-related event, writing "#FML," which in Internet-speak translates to "fuck my life," implying that he was upset that he could not have sexual relations with his subordinates.

16.     Also, by way of example only, Michael sought to hide a trip that he took with Kalanick and other male executives to a karaoke/escort bar, where each of the men selected a woman who was labeled with a number to spend the night with them, much to the chagrin of a female colleague from Uber.  When she reported the incident, Michael called another witness to

---

[3]     https://www.theguardian.com/technology/2015/oct/20/uber-driver-convicted-of-raping-passenger-delhi-shiv-kumar-yadav.

*Complaint for Damages*                                                                *Doe v. Uber Technologies, Inc.*

"confirm" that she would follow the party line and leave out the part of the evening where "numbered" escorts were selected.

17.     Alexander continued to retain Plaintiff's records until he was forced to turn them over in or around December 2015.

18.     Upon information and belief, Uber continues to maintain possession of Plaintiff's medical records.

19.     Uber's board of directors has acknowledged the egregious violation of Ms. Doe's privacy, with board member Arianna Huffington stating: "Our task now is to learn, rebuild and move forward together to write Uber's next chapter."

20.     Plaintiff is devastated by the acts of Uber and its executives, who have intruded into her very personal medical records from her sexual assault and callously disregarded her privacy by sharing their contents across the Company.

21.     Plaintiff brings this action for intrusion into private affairs and public disclosure of private facts, as well as for defaming her character.

## JURISDICTION AND VENUE

22.     The jurisdiction of this action arises under diversity of citizenship, which is codified pursuant to 28 U.S.C. § 1332.  Ms. Doe is a resident of Texas, Defendant Uber Technologies, Inc. is a citizen of California, and this action involves an amount in controversy in excess of $75,000.00, exclusive of interest and costs.

23.     The Court has personal jurisdiction over Defendant Uber Technologies, Inc. because it is headquartered in San Francisco, California and conducts business in California.

*Complaint for Damages*                                                    *Doe v. Uber Technologies, Inc.*

24.     Venue is proper in the Northern District of California pursuant to 28 U.S.C. §§ 1391(b) and (c) because Defendant is headquartered in this District and because Defendant conducts business in this District.

### PARTIES

25.     Jane Doe is an adult woman who resides in Texas.

26.     Defendant Uber Technologies, Inc. is a Delaware Corporation with its principal place of business located at 1455 Market Street, San Francisco, California 94103.

27.     Defendant Travis Kalanick is the Chief Executive Officer of Uber.   Upon information and belief, Kalanick is a resident of the State of California.

28.     Defendant Eric Alexander was, during all relevant times, the President for Business for Uber's Asia Pacific region.   Upon information and belief, Alexander is a resident of the State of California.   Alexander was terminated on or about June 7, 2017 when it came to light that he had obtained medical records of Plaintiff and then showed the records to Defendants Kalanick and Michael, and discussed with and/or showed the records to others at the Company.

29.     Defendant Emil Michael was, during all relevant times, the Senior Vice President for Business at Uber.   Upon information and belief, Michael is a resident of the State of California.   Michael departed Uber on June 12, 2017 as a result of a recommendation made in connection with an investigation conducted into Uber's culture and business practices.

### BACKGROUND AND FACTUAL ALLEGATIONS

I.     **Uber Technologies, Inc.**

30.     Launched in San Francisco in June 2010, Uber operates as a "transportation network company" throughout the world.   In a relatively new industry called "ride-hailing," Uber connects drivers and passengers through a downloadable smartphone application ("App")

called "Uber."   Individuals who have downloaded the App use it to make a request for transportation from one place to another for a fee.   An Uber driver responds to the ride request, picks up the individual and drives them to their destination.   App users pay Uber for the ride through the App with a credit card.   Uber pays the driver a share of the fare collected, and retains the remainder.

31.     Uber is available to the general public through its App.   It charges standardized fees (subject to multipliers during "surge pricing" periods) to customers in every city in which it operates, in the same way that a traditional taxi company does.

32.     Uber's business model requires an enormous pool of drivers in order to provide rides to customers quickly and efficiently.   To accomplish this, Uber solicits and retains thousands of non-professional drivers.   Uber markets to potential drivers on its website, where it states: "Uber needs partners like you.   Drive with Uber and earn great money. . .   Get paid weekly just for helping your community of passengers get rides around town."   After these drivers are hired by Uber, Uber makes the drivers available to the public to provide rides via the App.

33.     As of April 2017, Uber has employed over 1 million drivers and claims to be adding hundreds of thousands of drivers to its payroll every month.

34.     Uber's valuation has soared to $70 billion in 2017, and it is reported that the company generated $6.5 billion in revenues in 2016.

35.     As of July 2016, it was reported that Uber had raised nearly $12 billion in total funding, and the Company had previously stated that it had plans to hold an initial public offering ("IPO") in 2017.

*Complaint for Damages*                                                      *Doe v. Uber Technologies, Inc.*

36.     Uber has seen a barrage of negative press this year, including a New York Times report alleging numerous cases of workplace sexual harassment at Uber, scathing reports from attorneys Perkins Coie LLP and Covington & Burling LLP resulting in numerous terminations, as well as the departure, voluntary and involuntary, of numerous high-level executives.  The negative publicity appears to have halted the company's plans, and Uber has not confirmed if it will be holding an IPO in 2017.

37.     Neither drivers nor customers are charged fees to download the Uber App.  Uber's sole source of revenue is from charges to customers for rides.

38.     Uber's reckless expansion is the precise factor that has led to such staggering profits in such a short amount of time.

39.     Uber's goal of dominating and controlling the emerging ride-hailing market at the expense of a healthy workplace culture free of unlawful invasions of privacy and discrimination is a calculated decision made by senior executives that continues through the present.

40.     By rewarding employees who perform, regardless of complaints of discrimination, unlawful behavior or unethical practices, Uber has created an unrestrained, untenable work environment that permits and even encourages employees to engage in shocking and inappropriate behavior.

## II.     Uber's Unrestrained, Unethical Executives

41.     From the highest levels of the Company including the board level, Uber makes an intentional decision to look the other way when hiring and supervising its executives, essentially letting them "run wild" so long as new business ventures continue to succeed and profits continue to roll in.

42.     It was not until early 2017, when former Uber engineer Susan Fowler publicly complained about systemic gender discrimination at Uber, that the Company took any steps to examine the issue of whether her complaints were true.   Unfortunately, by that time, sex discrimination had become rampant across the Company.

43.     Absent public pressure from reporters at publications like The New York Times, Reuters and Recode, Uber would have continued to reward and promote employees who were unlawfully discriminating against subordinates and brushing complaints of discrimination under the proverbial rug.

44.     Kalanick has been caught on tape berating an Uber driver[4] and has sent out a highly inappropriate memorandum to staff regarding rules for having sex during a Company offsite event (including stating: "Yes, that means that Travis will be celibate on this trip. #CEOLife #FML," referring to the phrase "fuck my life" in Internet slang).[5]

45.     Michael is no better, having suggested that Uber should hire a team of opposition researchers to dig up dirt on the personal lives and backgrounds of reporters who were reporting negatively on Uber.   In particular, he wanted research on Sarah Lacy, who had accused the Company of "sexism and misogyny."[6]

46.     Michael also sought to silence a Human Resources complaint of gender discrimination, which alleged that he, Kalanick and other male executives all went to an escort

---

[4]     https://www.theverge.com/2017/2/28/14766868/uber-driver-argument-ceo-travis-kalanick-video.

[5]     https://www.recode.net/2017/6/8/15765514/2013-miami-letter-uber-ceo-kalanick-employees-sex-rules-company-celebration.

[6]     https://www.buzzfeed.com/bensmith/uber-executive-suggests-digging-up-dirt-on-journalists?utm_term=.fgxLYX4N6#.qy1vX7rMb.

bar in Korea and selected "numbered" women to spend time with them for the evening.  His

attempts were in vain, however, as the report came to light anyway, as did his attempts to cover it

up.[7]

### III.     Invasion of Jane Doe's Privacy

47.     On December 5, 2014, Plaintiff was sexually assaulted and raped by an Uber

driver named Shiv Kumar Yadav ("Yadav").

48.     Yadav had driven Plaintiff off-route to a remote and secluded area of Delhi, India.

49.     Subsequent to the rape, Plaintiff reported it to the police and underwent a medical

examination in connection the report.

50.     This report was highly confidential as it involved Plaintiff's personal medical

information and extremely sensitive details about the brutal rape.

51.     In undergoing the examination by the physician, Plaintiff believed that she had a

reasonable expectation of privacy in her medical records and that they would not be disseminated

to anyone beyond the police.

52.     Plaintiff's medical examination and the police report led to charges being filed

against Yadav with concomitant criminal proceedings.

53.     Two days after the incident, Travis Kalanick, Uber's Chief Executive Officer,

made the following public statement:

> What happened over the weekend in New Delhi is horrific. Our
> entire team's hearts go out to the victim of this despicable crime.
> We will do everything, I repeat, everything to help bring this
> perpetrator to justice and to support the victim and her family in
> her recovery.

---

[7]     https://www.theverge.com/2017/3/25/15061270/uber-employee-company-trip-south-korean-escort-bar.

*Complaint for Damages*                                    *Doe v. Uber Technologies, Inc.*

> We will work with the government to establish clear background checks currently absent in their commercial transportation licensing programs. We will also partner closely with the groups who are leading the way on women's safety here in New Delhi and around the country and invest in technology advances to help make New Delhi a safer city for women.

54.     Just a few days later, on or about December 13, 2014, Defendant Eric Alexander met with Delhi police and intentionally obtained Plaintiff's confidential medical records.

55.     Intrusion into medical records of a rape victim is highly offensive.

56.     Alexander examined the records closely and showed them to Kalanick and Michael.

57.     Upon information and belief, Alexander does not have any medical training.

58.     Upon information and belief, Kalanick does not have any medical training.

59.     Upon information and belief, Michael does not have any medical training.

60.     Alexander, Kalanick and Michael also discussed Plaintiff's records with numerous staff throughout Uber, including non-executives, and disseminated a defamatory theory that Plaintiff had "made up" her rape and was colluding with a rival taxi/ride-hailing company to jettison Uber's business in India.

61.     Alexander obtained Plaintiff's records and shared them with Kalanick and Michael so that he could attempt to defame and undermine her very serious allegations of sexual assault and rape.

62.     Plaintiff's medical records were not of legitimate public concern, especially because criminal proceedings were already underway as a result of Plaintiff's report to the police.

63.     Alexander carried around Plaintiff's medical records in a briefcase.

*Complaint for Damages*                                                    *Doe v. Uber Technologies, Inc.*

64.     Alexander and, upon information and belief, others at Uber retained a physical copy of Plaintiff's medical records until in or around December 2015.  Shockingly, it is not possible to estimate the number of times that Alexander waved Ms. Doe's medical information around Uber office's during this time period.

65.     Although it is unlawful and despicable that Alexander shared her sensitive information with even one person not privy to the ongoing legal issues in Delhi, it is clear that multiple individuals were informed about various details or shown the actual documents.

66.     In or around December 2015, others at Uber demanded that Alexander turn over the records.

67.     Upon information and belief, Uber continues to retain a copy of Plaintiff's medical records.

68.     In or around spring 2017, it was reported that Uber had hired two law firms, Perkins Coie LLP and Covington & Burling LLP, to investigate claims of sexual harassment as well as general workplace culture and misconduct.

69.     On or about June 6, 2017, it was reported that Uber had terminated approximately 20 employees in connection with the Perkins Coie investigation.

70.     That particular investigation, as of June 6, 2017, had, as of that date, resulted in the following:

- 215 total incident reports, including sexual harassment, bullying, bias and retaliation.
- 20 terminations so far.
- 31 employees in training or counseling.
- 7 written warnings.
- 100 cases with no action taken.

- 57 cases still open.[8]

71.    On or about June 7, 2017, Recode reported that Alexander had not been among the 20 employees terminated, showing that he was still insulated from the consequences of his actions.

72.    It was not until questioning regarding his flagrant privacy violations of Plaintiff that Recode later learned that Alexander had been terminated.[9]

73.    Plaintiff was devastated when she learned that her extremely private, confidential medical records had been passed around Uber.

74.    Plaintiff, through her counsel, requested an apology, but sadly as of this filing, none has been made.

75.    Furthermore, Plaintiff was shocked and horrified to learn that her medical records were the basis of rampant entirely unfounded, defamatory, spurious and callous speculation that Plaintiff had made up her claims in collusion with a rival tax/ride-hailing company.

**FIRST CAUSE OF ACTION**
**(Intrusion into Private Affairs)**
***Against All Defendants***

76.    Plaintiff realleges and reasserts each of the preceding paragraphs as if fully set forth herein.

77.    Plaintiff had a reasonable expectation of privacy in her medical records and police report filed on her behalf upon which Defendants intentionally intruded.

---

[8]    https://www.recode.net/2017/6/6/15749216/perkins-coie-lawyer-bobbie-wilson-uber-firings-dogged-investigating-misbehavior-not-over.

[9]    https://www.recode.net/2017/6/7/15754316/uber-executive-india-assault-rape-medical-records.

*Complaint for Damages*                                                    *Doe v. Uber Technologies, Inc.*

78.     This intrusion into Plaintiff's private medical records would be highly offensive to a reasonable person and Plaintiff was harmed as a result of such intrusion.

79.     Defendants' conduct was a substantial factor in Plaintiff's harm.

80.     As a result of Defendants' deliberate misrepresentations of material facts, Plaintiff suffered significant damages.

81.     Defendants knew or should have known that their intrusion into Plaintiff's private affairs would cause or had a substantial probability of causing severe emotional distress to Plaintiff, and in fact did cause and continues to cause her severe emotional distress.

82.     Defendants knew or reasonably should have known that Defendants' intrusion into Plaintiff's private affairs would be highly offensive, so as to warrant the imposition of punitive damages pursuant to California Civil Code Section 3294.

83.     The conduct of Defendants was also engaged in with fraud, oppression and/or malice, and was in conscious disregard of the rights and safety of others, including, but not limited to, Plaintiff herein, so as to warrant the imposition of punitive damages pursuant to California Civil Code Section 3294.

Accordingly, Plaintiff is entitled to recovery against Defendants in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### (Public Disclosure of Private Facts)
#### *Against All Defendants*

84.     Plaintiff realleges and reasserts each of the preceding paragraphs as if fully set forth herein.

85.     Defendants publicized private information concerning Plaintiff, including, but not limited to, medical records regarding a sexual assault and rape.

*Complaint for Damages*                                             *Doe v. Uber Technologies, Inc.*

86.     A reasonable person in Plaintiff's position would consider publicity regarding such records to be highly offensive and heinous.

87.     Defendants knew or should have known that a reasonable person in Plaintiff's position would consider publicity highly offensive.

88.     The private information made public by Defendants was not of legitimate public concern.

89.     As a direct and proximate result of the publicity of her private information and the unlawfulness of Defendants' behavior, Plaintiff sustained serious harm.

90.     Defendants knew or should have known that their publicity of Plaintiff's private information would cause or had a substantial probability of causing severe emotional distress to Plaintiff, and in fact did cause and continues to cause her severe emotional distress.

91.     Defendants knew or reasonably should have known that Defendants' publicity of Plaintiff's private information would be highly offensive, so as to warrant the imposition of punitive damages pursuant to California Civil Code Section 3294.

92.     The conduct of Defendants was also engaged with fraud, oppression and/or malice, and was in conscious disregard of the rights and safety of others, including, but not limited to, Plaintiff herein, to warrant the imposition of punitive damages pursuant to California Civil Code Section 3294.

93.     Accordingly, Plaintiff is entitled to recovery against Defendants in an amount to be determined at trial.

1
2

### THIRD CAUSE OF ACTION
(Defamation *Per Se*)
*Against Defendants Kalanick, Alexander and Michael*

3

94.     Plaintiff realleges and reasserts each of the preceding paragraphs as if fully set

4

forth herein.

5

95.     Defendants Kalanick, Alexander and Michael made numerous statements to each

6

7

other and other employees at Uber that Plaintiff was fraudulently claiming that she had been

8

raped in collusion with a rival of Uber.

9

96.     Defendants Kalanick, Alexander and Michael, as well as employees at Uber,

10

reasonably understood that the statements were about Plaintiff.

11

97.     Defendants Kalanick, Alexander and Michael, as well as employees at Uber,

12

13

reasonably understood the statements to mean that Plaintiff was committing the crime of fraud

14

by falsely alleging that she had been raped.

15

98.     Defendants Kalanick, Alexander and Michael failed to use reasonable to care to

16

determine the truth or falsity of the statements.

17

99.     Plaintiff learned about the statements of Defendants Kalanick, Alexander and

18

19

Michael on or about June 7, 2017.

20

100.    As a result of Defendants Kalanick's, Alexander's and Michael's deliberate

21

misrepresentations of facts, Plaintiff suffered significant damages.

22

23

101.    Defendants Kalanick, Alexander and Michael knew or should have known that

24

their defamatory statements regarding Plaintiff would cause or had a substantial probability of

25

causing severe emotional distress to Plaintiff, and in fact did cause and continues to cause her

26

severe emotional distress.

27
28

102.    Defendants Kalanick, Alexander and Michael knew or reasonably should have known that their defamatory statements regarding Plaintiff would be highly offensive, so as to warrant the imposition of punitive damages pursuant to California Civil Code Section 3294.

103.    Accordingly, Plaintiff is entitled to recovery against Defendants in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court enter judgment in her favor and against Defendants, containing the following relief:

A.    A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the State of California and any other applicable jurisdiction within the United States of America;

B.    An injunction and order permanently restraining Defendants from engaging in such unlawful conduct;

C.    Enter a permanent injunction directing that Uber take all affirmative steps necessary to remedy the effects of the unlawful conduct alleged in this Complaint, and to prevent repeated occurrences in the future;

D.    An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all physical, monetary and/or economic harm; for harm to her reputation; for all non-monetary and/or compensatory harm, including, but not limited to, compensation for mental anguish and physical injuries; all other monetary and/or non-monetary losses suffered by Plaintiff;

E.    An award of punitive damages;

F.    An award of costs that Plaintiff has incurred in this action, as well as Plaintiff's

*Complaint for Damages*                                                            *Doe v. Uber Technologies, Inc.*

1    reasonable attorneys' fees and expenses to the fullest extent permitted by law; and

2        G.      Such other and further relief as the Court may deem just and proper.

3                                   **JURY DEMAND**

4        Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

5
    Dated: June 15, 2017
6           New York, New York                    Respectfully submitted,

7
                                                   **WIGDOR LLP**
8

9                                                  By: _____
10                                                     Douglas H. Wigdor
                                                       Jeanne M. Christensen
11                                                     Elizabeth J. Chen

12                                                 85 Fifth Avenue
13                                                 New York, NY 10003
                                                   Telephone: (212) 257-6800
14                                                 Facsimile: (212) 257-6845
                                                   dwigdor@wigdorlaw.com
15                                                 jchristensen@wigdorlaw.com
                                                   echen@wigdorlaw.com
16

17                                                 **ANDERSON & POOLE, P.C.**

18

19                                                 By: _____
                                                       Jamie C. Couche
20

21                                                 601 California Street, Suite 1300
                                                   San Francisco, CA 94108
22                                                 Tel.: (415) 956-6413
                                                   Fax: (415) 956-6416
23                                                 jcouche@adplaw.com

24

25                                                 *Counsel for Plaintiff*

26

27

28

                                  Page **18** of **18**

*Complaint for Damages*                                    *Doe v. Uber Technologies, Inc.*